# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re<br><br>Iesha T. Gordon,<br>        Debtor. | ) Case No: 21-06968<br>)<br>) Chapter: 7<br>)<br>) Judge: Hon. LaShonda A. Hunt<br>)<br>) |

## NOTICE OF MOTION

**TO: See attached service list**

PLEASE TAKE NOTICE that on <u>July 16, 2021</u> at <u>9:15 a.m.</u>, or soon thereafter as I may be heard, I shall appear before the Honorable LaShonda A. Hunt, or any judge sitting in that judge's place, and present the motion of <u>Nissan Motor Acceptance Corporation</u> ("Movant"), to Modify the Automatic Stay, a copy of which is attached.

**This motion will be presented and heard electronically using Zoom for Government.** No personal appearance in court is necessary or permitted. To appear and be heard on the motion, you must do the following:

**To appear by video**, use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and password.

**Meeting ID and password.** The meeting ID for this hearing is **161 165 5696** and the password is **7490911**. The meeting ID and password can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (**2**) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

BONIAL & ASSOCIATES, P.C.

/s/ Wesley T. Kozeny
Wesley T. Kozeny / # 6199471
12400 Olive Blvd, Suite 555
St. Louis, Missouri 63141
Phone: (314) 991-0255
Fax: (314) 991-6755
ILBK@BonialPC.com
Attorney for Nissan Motor Acceptance Corporation

5930-N-8763

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this notice and the attached motion was served on each entity shown on the attached list at the address shown and by the method indicated on the list on <u>June 21, 2021</u>.

                                       Respectfully Submitted

                                       <u>/s/ Wesley T. Kozeny</u>
                                       Wesley T. Kozeny

### Service List:

**Debtor's Attorney**                                    *via Electronic Notice via CM/ECF*
David M. Siegel
David M. Siegel & Associates
790 Chaddick Drive
Wheeling, IL 60090

**Chapter 7 Trustee**                                     *via Electronic Notice via CM/ECF*
Peter N. Metrou
123 W Washington St Suite 216
Oswego, Illinois 60543

**US Trustee**                                                 *via Electronic Notice via CM/ECF*
Office of the U.S.Trustee
219 S. Dearborn St., Room 873
Chicago, Illinois 60604

**Debtor**                                                       *via U.S. Mail*
Iesha T. Gordon
1867 Wren Rd.
Yorkville, Illinois 60560

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re )<br>)<br>Iesha T. Gordon, )<br>     Debtor(s). )<br>) | Case No: 21-06968<br>Chapter: 7<br>Judge: Hon. LaShonda A. Hunt |

## **MOTION FOR RELIEF FROM AUTOMATIC STAY AND ABANDONMENT**

COMES NOW Nissan Motor Acceptance Corporation, its subsidiaries, affiliates, predecessors in interest, successors and/or assigns ("Movant"), through the undersigned counsel, pursuant to Federal Rules of Bankruptcy Procedure 4001 and 9014, and states as follows in support of its Motion herein:

*REQUIRED STATEMENT (Form G-4) IS ANNEXED HERETO AND FILED HEREWITH AS REQUIRED BY LOCAL RULE 4001-1*

1.  On May 31, 2021, the Debtor, above-named, filed a voluntary petition in Bankruptcy under Title 11, Chapter 7, U.S.C., in the United States Bankruptcy Court, for the Northern District of Illinois.

2.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 151, 157 and 1334 and applicable local rules. This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2). Venue is proper in this District under 28 U.S.C. Section 1409(a).

3.  The Debtor, Iesha T. Gordon, ("Obligor(s)") is indebted to Movant pursuant to a Retail Installment Contract (the "Debt Obligation"). A copy of the Debt

Obligation is attached hereto and incorporated herein as Exhibit A. Movant is entitled to enforce the Debt Obligation.

4. As security for repayment of the Debt Obligation the Obligor(s) have pledged certain collateral described as 2015 Nissan Altima, VIN: 1N4AL3AP0FC116031 ("Collateral"). A copy of the proof of perfection of Movant's interest is in the Collateral ("Security Interest") is attached hereto and incorporated herein as Exhibit B.

5. All rights and remedies under the Debt Obligation and Security Interest have been assigned to the Movant by the terms of the Debt Obligation itself.

6. As of June 17, 2021, the outstanding indebtedness owed to Movant less any partial payments or suspense balance is $4,878.09.

7. As of June 18, 2021, the average trade-in value of the Collateral is $8,625.00. The basis for this value is NADA estimate of value. A copy of said valuation is attached hereto as Exhibit C.

8. The Debt Obligation matured 10/5/2020 and the Debtor's Form 108 Statement of Intention is to surrender the Collateral.

9. The Collateral is burdensome to the Estate and is of inconsequential value and benefit to the Estate. As such, Movant is entitled to an Order directing the Trustee to abandon the Collateral pursuant to 11 U.S.C. §554(b).

10. Cause exists for relief from the automatic stay under 11 U.S.C. §362(d) for the following reasons:

    a. 11 U.S.C. §362(d)(1) - For cause in that payments required to be made by Obligors to Movant are not being made as required by the Debt Obligation – i.e., the Debt Obligation matured 10/5/2020 and the Debtor has expressed the intention to surrender the Collateral in

Form 108.

WHEREFORE, Movant prays that this Court issue an Order:

1. Terminating or modifying the stay imposed by 11 U.S.C. 362(a) allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies in and to the Collateral.

2. That the Order be binding and effective despite any conversion of the bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

3. For an Order of Abandonment pursuant to 11 U.S.C. §554(b).

4. That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

5. For such other relief as the Court deems proper.

Dated: June 21, 2021

BONIAL & ASSOCIATES, P.C.

/s/ Wesley T. Kozeny
Wesley T. Kozeny / # 6199471
12400 Olive Blvd, Suite 555
St. Louis, Missouri 63141
Phone: (314) 991-0255
Fax: (314) 991-6755
ILBK@BonialPC.com
Attorney for Nissan Motor Acceptance Corporation

Form G-4

# REQUIRED STATEMENT
# TO ACCOMPANY MOTIONS FOR RELIEF FROM STAY

Debtor(s)  Iesha T. Gordon                  Case No.  21-06968     Chapter  7

Moving Creditor  Nissan Motor Acceptance Corporation       Date Case Filed  05/31/2021

Nature of Relief Sought   ☑ Lift Stay   ☐ Annual Stay   ☑ Other (describe) _____

☐ No-Asset Report Filed on _____
☐ No-Asset Report not Filed, Date of Creditors Meeting    07/06/2021

1. Collateral
   a. ☐ Home
   b. ☑ Car   Year, Make Model   2015 Nissan Altima, VIN: 1N4AL3AP0FC116031
   c. ☐ Other (describe) _____

2. Balance Owed as of Petition Date   $4,878.09
   Total of all other Liens against Collateral   _____

3. In chapter 13 cases, if a post-petition default is asserted in the motion, attach a payment history listing the amounts and dates of all payments received from the debtor(s) post-petition.

4. Estimated Value of Collateral (must be supplied in *all* cases)   $8,625.00

5. Default
   a. ☐ Pre-Petition Default
      Number of months _____   Amount: _____

   b. ☐ Post-Petition Default
      Number of months _____   Amount: _____

      i. ☐ On direct payments to the moving creditor
         Number of months _____   Amount: _____

      ii. ☐ On payments to the Standing Chapter 13 Trustee
         Number of months _____   Amount: _____

6. Other Allegations
   a. ☑ Lack of Adequate Protection § 362(d)(1)
      i.   ☐ No insurance
      ii.  ☐ Taxes unpaid   Amount _____
      iii. ☑ Rapidly depreciating asset
      iv.  ☑ Other (describe):   Contract matured, intention to surrender

   b. ☐ No Equity and not Necessary for an Effective Reorganization § 362(d)(2)

   c. ☑ Other "Cause" § 362(d)(1)
      i.   ☐ Bad Faith (describe) _____
      ii.  ☐ Multiple Filings
      iii. ☑ Other (describe):   Failure to pay per contract and intent to surrender

   d. Debtor's Statement of Intention regarding the Collateral
      1. ☐ Reaffirm   ii. ☐ Redeem   iii. ☑ Surrender   iv. ☐ No Statement of Intention Filed

Date:       June 21, 2021                    /s/ Wesley T. Kozeny
                                             Counsel for Movant

5930-N-8763

EXHIBIT - A



## SignaturePURCHASE®
### NISSAN MOTOR ACCEPTANCE CORPORATION
### SIMPLE INTEREST RETAIL INSTALLMENT CONTRACT WITH ARBITRATION CLAUSE – ILLINOIS

| BUYER'S NAME | | | | | DATE OF CONTRACT |
|---|---|---|---|---|---|
| IESHA GORDON | | | | | 5/21/2015 |
| BUYER'S RESIDENCE OR PLACE OF BUSINESS | | COUNTY | | ZIP CODE | CONTRACT NO. |
| 7341 S ALBANY, CHICAGO, IL | | COOK | | 60629 | |
| CO-BUYER'S NAME AND ADDRESS | | COUNTY | | ZIP CODE | |
| N/A | | N/A | | | |

In this contract the words "we", "us" and "our" refer to the creditor (Seller) named below and, after an assignment of this contract, will refer to the assignee of the contract. The words "you" and "your" refer to the buyer and co-buyer, if any, named herein. The Seller intends to sell this contract to Nissan Motor Acceptance Corporation ("NMAC").

Seller sells you the vehicle described below on credit. The estimated credit price is shown below as the "Total Sale Price". The "Cash Price" is also shown below. By signing this contract you choose to buy the "vehicle" on credit and agree to pay us the Amount Financed and other charges according to the terms and agreements shown in this contract. If this contract is signed by a buyer and co-buyer, each is individually and together responsible for all agreements in the contract.

| YEAR | NEW | USED | MAKE | TRADE NAME | CYL | BODY STYLE | MODEL | ODOMETER READING | ID NUMBER |
|---|---|---|---|---|---|---|---|---|---|
| 2015 | X | | | NISSAN | 0 | 4DR SDN S | ALTIMA | 13 | 1N4AL3AP0FC116031 |

☐ AIR CONDITIONING ☐ SUN ROOF ☐ ALARM ☐ STEREO ☐ CD PLAYER ☐ BUMPER ☐ LEATHER INTERIOR OTHER N/A KEY CODE N/A

| COLOR | TRADE-IN DESCRIPTION | USE FOR WHICH | ☒ PERSONAL, FAMILY, HOUSEHOLD OR AGRICULTURAL |
|---|---|---|---|
| RED | YR: 2010 MAKE: CHEVROLET MODEL: MALIBU | PURCHASED: | ☐ BUSINESS OR COMMERCIAL ☐ PROFESSIONAL |

### ITEMIZATION OF THE AMOUNT FINANCED
1. Vehicle (Incl. Acc.) .................... $ 23,055.00 (1)
2. N/A ............................................ $ N/A (2)
3. N/A ............................................ $ N/A (3)
4. N/A ............................................ $ N/A (4)
5. N/A ............................................ $ N/A (5)
6. N/A ............................................ $ N/A (6)
7. DOCUMENTARY FEE ................ $ 168.43 (7)
   A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS AND PERFORMING SERVICES RELATED TO CLOSING OF A SALE. THE BASE DOCUMENTARY FEE BEGINNING JANUARY 1, 2012, WAS $161.38. THE MAXIMUM AMOUNT THAT MAY BE CHARGED FOR A DOCUMENTARY FEE IS THE BASE DOCUMENTARY FEE OF $161.38 WHICH SHALL BE SUBJECT TO AN ANNUAL RATE ADJUSTMENT EQUAL TO THE PERCENTAGE OF CHANGE IN THE BUREAU OF LABOR STATISTICS CONSUMER PRICE INDEX. THIS NOTICE IS REQUIRED BY LAW.
8. Subtotal (1+2+3+4+5+6+7) ............ $ 23,223.43 (8)
9. Downpayment
   A. Trade-in (Gross Value) ............ $ 6,500.00 (A)
   B. Less Trade-in Payoff paid to WELLS FARGO AUTO $ 12,608.60 (B)
   C. Net trade-in allowance (A-B) .... $ -6,108.60 (C)
   D. Cash Downpayment at Closing ... $ 3,500.00 (D)
   E. Rebate type (if any) ................ $ 1,500.00 (E)
   F. Deferred Downpayment (due on N/A ) ... $ N/A (F)
   G. Total Cash Downpayment (D+E+F) ... $ 5,000.00 (G)
   Total Downpayment (C+G) ............ $ 0.00 (9)
10. Unpaid Balance of Cash Price Owed To Seller For Above Goods and Services (8-9) ... $ 23,223.43 (10)
11. Amounts paid to others on your behalf: Paid to Public Officials:
    A. License .................................. $ 25.00 (A)
    B. Registration ........................... $ N/A (B)
    C. Certificate of Title .................. $ 95.00 (C)
    D. Sales Tax ............................... $ 1,606.10 (D)
    E. Other Taxes _____ ................. $ N/A (E)
    F. N/A ........................................ $ N/A (F)
    Paid to Insurance Companies Per Statement of Insurance (Seller may retain or receive a portion of these amounts):
    G. *Total Vehicle Insurance ........ $ N/A (G)
    H. **Total Credit Insurance ......... $ N/A (H)
    I. †Total Other Optional Insurance $ N/A (I)
    J. GAP Premium ......................... $ 269.00 (J)
    Other (Seller may retain or receive a portion of these amounts):
    K. Paid to WELLS FARGO AUTO FINANCE
       for ELEC FILING ..................... $ 1,108.60 (K)
    L. Paid to CVR
       for ERT .................................. $ 25.00 (L)
    M. Paid to N/A
       for N/A ................................... $ N/A (M)
    N. Paid to N/A
       for N/A ................................... $ N/A (N)
    O. Paid to N/A
       for N/A ................................... $ N/A (O)
    Total Other Charges (11A+B+C+D+E+F+G+H+I+J+K+L+M+N+O) $ 3,128.70 (11)
12. Unpaid Balance / AMOUNT FINANCED (10+11) ... $ 26,352.13 (12)
13. FINANCE CHARGE ...................... $ 617.27 (13)
14. DEFERRED PAYMENT PRICE (8+11+13) ... $ 26,969.40 (14)

### DISCLOSURES PURSUANT TO THE TRUTH-IN-LENDING ACT

| ANNUAL PERCENTAGE RATE (The cost of your credit as a yearly rate.) | 0.90 % |
|---|---|
| FINANCE CHARGE (The dollar amount the credit will cost you.) | $ 617.27 |
| Amount Financed (The amount of credit provided to you or on your behalf.) | $ 26,352.13 |
| Total of Payments (The amount you will have paid after you have made all payments as scheduled.) | $ 26,969.40 |
| Total Sale Price (The total price of your purchase on credit, including your downpayment of $ 0.00 .) | $ 26,969.40 |

**Payment Schedule.** Your payment schedule will be:

| NUMBER OF PAYMENTS | AMOUNT OF EACH PAYMENT | PAYMENTS ARE DUE |
|---|---|---|
| One Payment of | $ N/A | On N/A |
| 60 Payments of | $ 449.49 | Monthly, Beginning 7/5/2015 |
| Payments of | $ N/A | Monthly, Beginning N/A |
| One Final Payment of | $ N/A | On N/A |

**SECURITY INTEREST:** You are giving a security interest in the vehicle being purchased.
**LATE CHARGE:** If payment is more than 10 days late, you will be charged 5% of the installment on installments in excess of $200, or $10 on installments of $200 or less.
**PREPAYMENT:** If you pay off in full early, you will not have to pay a penalty.
See additional provisions in this contract about nonpayment, default, any required repayment in full before the scheduled date and security interests.

### SERVICE, MAINTENANCE AND RELATED AGREEMENTS
No Service Contract or Maintenance Contract is required to purchase or obtain financing for a motor vehicle. These are options which are fully detailed in the contracts or certificates describing them. Please read those documents before signing this contract. If you elect either of these items by signing below, the cost is included in the Amount Financed under this contract. Seller may retain or receive a portion of these amounts.

1. Service Contract      $ N/A     Deductible; Term N/A mos.; Cost $ N/A
2. Maintenance Contract  $ N/A     Deductible; Term N/A mos.; Cost $ N/A
3. N/A                   $ N/A     Deductible; Term N/A mos.; Cost $ N/A
4. N/A                   $ N/A     Deductible; Term N/A mos.; Cost $ N/A
5. N/A                   $ N/A     Deductible; Term N/A mos.; Cost $ N/A

Buyer and Co-Buyer want: ___ 1; ___ 2; N/A 3; N/A 4; N/A 5.

Buyer _____ Co-Buyer _____

### GUARANTEED AUTO PROTECTION ("GAP") AGREEMENT (OPTIONAL)
This GAP Agreement, or debt cancellation agreement, is not required to obtain credit and will not be provided unless you sign and agree to pay the cost indicated below.
This GAP Agreement is available from AHIS _____ (name of provider) of MIAMI, FL _____ (provider's address) for the amount shown below. The contract or certificate issued by the provider will more fully describe all the terms and conditions of this GAP Agreement.

Buyer and Co-Buyer want this GAP Agreement: Term 60 months; Cost $ 269.00

Buyer [signature] _____ Co-Buyer _____

NMAC 2001-IL-E 10/12     Page 1 of 4

## STATEMENT OF INSURANCE

You have the option to obtain the required coverages, and any optional coverages you desire, from a person of your choice and through any insurance company authorized to transact business in Illinois, or through existing policies owned or controlled by you.

### VEHICLE INSURANCE

**Required Coverages**
You are required to maintain insurance on the vehicle for at least collision ($ N/A deductible), and comprehensive ($ N/A deductible), or equivalent coverages, until you pay off this contract.
If you elect to obtain the required coverages from Seller, the coverages are written by N/A (name of company) and the premium and term are as follows:

| Coverage: | Deductible | Term | Premium |
|---|---|---|---|
| Collision | $ N/A | N/A mos. | $ N/A |
| Comprehensive | $ N/A | N/A mos. | $ N/A |

**Optional Coverages**
These coverages are optional and are not required by Seller. If obtained through Seller, the premium and term are as follows:

| Liability Coverage: | Limits | Term | Premium |
|---|---|---|---|
| Bodily Injury | $ N/A | N/A mos. | $ N/A |
| Property Damage | $ N/A | N/A mos. | $ N/A |

(See policy or certificate of insurance for description of terms, conditions and deductible.)
**TOTAL VEHICLE INSURANCE PREMIUMS:** $ N/A   11G*

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT UNLESS CHARGES FOR IT ARE SHOWN ABOVE. BY SIGNING THIS CONTRACT WITH THE ABOVE VEHICLE INSURANCE PREMIUMS IN IT, YOU VOLUNTARILY ELECT TO INCLUDE THOSE PREMIUMS IN THE AMOUNT FINANCED.

### CREDIT INSURANCE

Credit Life Insurance and Credit Disability Insurance are not required to obtain credit and will not be provided unless you sign and agree to pay the additional cost. If you purchase Credit Life Insurance, it will pay the balance that would be owing if all payments as originally scheduled have been timely made as of the death of the named insured and the cause of death is not excluded, up to a maximum of $ N/A. If you purchase Credit Disability Insurance, it will pay the payments as originally scheduled up to a maximum of $ N/A per month while the named insured is disabled as defined in the policy, subject to the minimum disability period and up to a maximum of $ N/A. These coverages are available from N/A (name of company) of N/A (home address) for the premium shown below. The policies or certificates issued by the company will more fully describe all the terms and conditions. You want:

| Type of Coverage | Term | Premium |
|---|---|---|
| ☐ Credit Life (on Buyer only) | N/A mos. | $ N/A |
| ☐ Joint Credit Life (on Buyer and Co-Buyer) | N/A mos. | $ N/A |
| ☐ Credit Disability (on Buyer only) | N/A mos. | $ N/A |
| ☐ Joint Credit Disability (on Buyer and Co-Buyer) | N/A mos. | $ N/A |

**TOTAL CREDIT INSURANCE PREMIUMS:** $ N/A   11H**

### OTHER OPTIONAL INSURANCE

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

☐ N/A    N/A mos.   $ N/A
Type of Coverage    Term    Premium
Provider Name: N/A
Address: N/A

☐ N/A    N/A mos.   $ N/A
Type of Coverage    Term    Premium
Provider Name: N/A
Address: N/A

**TOTAL OTHER OPTIONAL INSURANCE PREMIUMS** $ N/A   11I†
You want the credit and/or other optional insurance checked above. We will apply for this insurance on your behalf.

SIGNATURE _____ SIGNATURE _____

---

### SignatureDIRECTPAY AUTHORIZATION AGREEMENT
(Not required. Please complete and sign if you want this option.)

You agree to let us debit the payments shown in this contract from your account electronically when they are due. The payments will be debited from the Bank or other financial institution listed below. You also agree to let your Bank honor the debit requests. You agree to continue to make your payments until you are notified by us that the debit payment process is engaged. This agreement will be in effect until all the payments have been made. You can stop the debits at any time by giving us and your Bank written notice to cancel that allows a reasonable period of time for us to act. You acknowledge that we will not send you paper monthly billing statements. You will be able to view your monthly billing statement electronically by logging in and registering at www.nissanfinance.com. You agree to provide us with a voided check that has your Bank name, branch address and account number so we can arrange the debits.

SIGNATURE / DATE (BUYER OR CO-BUYER)

SIGNATURE / DATE (BANK ACCOUNT OWNER OR JOINT OWNER IF OTHER THAN BUYER OR CO-BUYER)

N/A
BANK NAME

### NOTICE OF POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM

(1) IF YOU HAVE PURCHASED EITHER CREDIT LIFE OR DISABILITY INSURANCE, OR BOTH, TO GUARANTEE PAYMENTS BEING MADE IN CASE OF YOUR DEATH OR DISABILITY, ON YOUR VEHICLE PURCHASED UNDER AN INSTALLMENT SALES CONTRACT, YOU MAY BE ENTITLED TO A PARTIAL REFUND OF YOUR PREMIUM IF YOU PAY OFF YOUR INSTALLMENT LOAN EARLY.

(2) IN CASE OF EARLY COMPLETE PAYMENT OF YOUR LOAN YOU SHOULD CONTACT THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE TO SEE IF A REFUND IS DUE. IF YOUR VEHICLE DEALER FINANCED YOUR LOAN, THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE IS YOUR VEHICLE DEALER.

### AGREEMENT TO ARBITRATE:
By signing below, you agree that, pursuant to the Arbitration clause in this contract, you or we may elect to resolve disputes by neutral, binding arbitration and not by a court action. **READ THE ARBITRATION CLAUSE ON PAGE 4 BEFORE SIGNING HERE.**

Buyer Signature _____
Co-Buyer Signature _____

SEE ADDITIONAL TERMS AND CONDITIONS, INCLUDING DISCLAIMER OF WARRANTIES, WHICH ARE A PART OF THIS CONTRACT.

**The Annual Percentage Rate May Be Negotiable With The Dealer.**

NOTICE TO THE BUYER – 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. 2. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN. 3. UNDER THE LAW YOU HAVE THE RIGHT, AMONG OTHERS, TO PAY IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS MAY SAVE A PORTION OF THE FINANCE CHARGE. KEEP THIS CONTRACT TO PROTECT YOUR LEGAL RIGHTS.

---

UNLESS CHARGES FOR LIABILITY INSURANCE ARE REFLECTED UNDER "OPTIONAL COVERAGES" IN THE "STATEMENT OF INSURANCE" AND IN LINE 11G UNDER "ITEMIZATION OF THE AMOUNT FINANCED", THE FOLLOWING STATEMENT APPLIES:

# NO PUBLIC LIABILITY INSURANCE ISSUED WITH THIS TRANSACTION

BUYER ACKNOWLEDGES RECEIPT OF A FULLY COMPLETED COPY OF THIS RETAIL INSTALLMENT CONTRACT WITH NO BLANK SPACES.

### RETAIL INSTALLMENT CONTRACT

Buyer sign here _____
Address 7341 S ALBANY
COOK,CHICAGO
IL    Zip 60629    Phone _____

Co-Buyer sign here _____
Address N/A
_____ Zip _____ Phone _____

Seller's Name STAR NISSAN, INC
Seller's Address 5757 W. Touhy Ave, Niles, IL 60714
By _____ Title FSM

Seller may assign this contract and may retain or receive a portion of the Finance Charge.

## ADDITIONAL TERMS AND AGREEMENTS

**A. PAYMENT:** You promise to pay the Amount Financed plus the Finance Charge at the Annual Percentage Rate as disclosed in this contract, in addition to the Total Downpayment, at the times and in the amounts set forth in this contract. The Finance Charge is computed as simple interest and will be calculated on a daily basis. Finance Charge will accrue on the unpaid balance of the Amount Financed at the Annual Percentage Rate shown in the disclosures until it is fully paid. We will apply your payments in the following order: (1) earned but unpaid finance charge; and (2) to anything else you owe under this agreement. Except as set forth in this contract, other amounts which may be due to Seller because of your failure to keep your contract promises will ACCRUE INTEREST AT THE ANNUAL PERCENTAGE RATE (APR) as disclosed in this contract and be payable UPON DEMAND, but in no event later than the time your final payment is due. The Finance Charge, Total of Payments, Total Sale Price and Payment Schedule shown in the disclosures in this contract are based upon the expectation of payment exactly as disclosed; early or late payment may affect the amount of Finance Charge you will pay, and consequently your final payment may differ from the amount of estimated final payment disclosed herein. Your promise requires you to pay the final payment on the date due, which payment will be equal to all unpaid sums lawfully owed under this contract even if the amount of the final payment differs from the estimated amount of the final payment disclosed herein.

**B. SECURITY INTEREST:** You give us a security interest under Illinois law in the vehicle and all parts and accessories which now or hereafter constitute accessions to the vehicle and in all proceeds of such vehicle and accessions. To the extent permitted by law, you also give us a security interest in all rights to any refunds of unearned insurance premiums and unearned service contract or maintenance contract charges included in this contract, and in all proceeds of these coverages and contracts. The security interests secure all obligations which may become due under this contract.

**C. USE OF VEHICLE:** You agree to keep the vehicle free of all delinquent taxes and liens, except the security interest under this contract, and not to use the vehicle illegally, improperly, or for hire. You agree not to make any material change in the vehicle, remove it from this State for a period of 30 or more days, or transfer any interest in the vehicle, without our written consent, and not to subject the vehicle to lawful seizure. If we pay any liens, taxes or other amounts because you breached your promise, we will provide you with reasonable notice to the extent required by applicable law and you will reimburse us upon demand for any amounts so paid, plus Finance Charge thereon, calculated at the Annual Percentage Rate shown in this contract, from the date of our payment until you repay us in full.

**D. INSURANCE: You agree to keep the vehicle insured in favor of us with a policy reasonably satisfactory to us for collision coverage, and comprehensive or fire, theft and combined additional coverage, in amounts not less than the unpaid sums owed under this contract, or the insurable value of the vehicle, whichever is less, subject to the deductibles shown in this contract. Any policy of insurance shall be endorsed to show us as additional loss payee and shall provide that we receive not less than 10 days' prior written notice of cancellation. You agree that we can obtain and use any proceeds from insurance to repair or replace the vehicle. You must use physical damage insurance proceeds to repair the vehicle, unless otherwise agreed by us in writing. If the unpaid amount owed on this contract has been lawfully declared due at that time, at our option we may instead obtain and apply the insurance proceeds to reduce what you owe under this contract. To the extent permitted by law, any refunds we receive of unearned premiums financed in this contract will be applied to amounts owed under this contract or, if there is no amount then lawfully owed, refunded to you. Refund credits will include the amount of the refund we receive and any unearned Finance Charge thereon. Whether or not you have acquired credit insurance or insure the vehicle is insured, you must pay for it, after it is delivered to you, even if it is lost, damaged, or destroyed (other than as a result of fault in the vehicle or our fault).**

**E. PREPAYMENT OF AMOUNTS OWED:** You may prepay the amount owed (net of any unearned Finance Charge) under this contract at any time. If you prepay a portion of your balance, payment will be applied as described in section A above. Your next payment will be due on the next regular installment date. If you prepay in full, your obligation will be determined using a simple interest approach as of the date we are paid in full.

**F. DEFAULT:** If you default in the performance of any of your obligations under this contract, including, but not limited to, the failure to make any payment when due, or the occurrence, pendency, or existence of a bankruptcy or insolvency proceeding, or if we in good faith believe that the prospect of payment or performance is impaired we may at our option (subject to compliance with notice and other requirements of applicable law then prevailing, if any) declare the entire unpaid balance of this contract (net of any unearned Finance Charge) immediately due and payable in full, and you waive notice of our intention to do so. If you fail to pay any amount when due, or when declared due under this section F, or fail to comply with any of your other obligations under this contract, we will have, in addition to our other lawful rights and remedies, all rights and remedies of a secured party under the law, including, but not limited to, the right, so long as we do not breach the peace, to take possession of the vehicle (and parts and accessories which now or hereafter constitute accessions to the vehicle) and, after giving notice as required by law, to sell the vehicle, unless you redeem it (or, when you may be entitled under the law, reinstate this contract) before sale in accordance with the law. Except as otherwise required by law, you agree that 10 days' notice mailed in accordance with section I (6) below will be reasonable and sufficient notice of any such sale. You agree to make the vehicle available to us at a place we designate which is reasonably convenient to both you and us if we request you to do so. Upon your default, and to the extent permitted by law, we may also cancel any credit life and disability insurance, other insurance coverages, service contracts or maintenance contracts and recover the unearned premiums or charges therefor pursuant to our security interest therein. The proceeds of sale, unearned premiums or charges, collection and/or enforcement will be applied first to the following items: expenses of retaking, holding, preparing for disposition, processing, and disposing of the vehicle; and, to the extent permitted by law, expenses of collection and enforcement, reasonable attorneys' fees and legal expenses. All remaining proceeds will be applied to the balance (net of any unearned Finance Charge) lawfully owing under this contract. If any money is left over (surplus) then, subject to the rights of the holders of any subordinate security interests, it will be paid to you. If a balance still remains owing,

you will pay it subject to applicable laws then in effect. Our remedies are cumulative, and not exclusive, and any action which we take shall not prevent us from pursuing any other remedy except as limited by applicable law. If this contract is referred for collection to an attorney who is not a salaried employee of the Seller or Holder of this contract, you agree to pay that attorney's reasonable fee, and court costs, to the extent permitted by law. To the extent permitted by law, you agree to pay any other collection costs we incur. If the vehicle is repossessed and any personal items are found in the vehicle, we may store them for you and at your expense. If you fail to claim the personal property within 90 days after repossession, we can retain the property or dispose of the property in a reasonable manner and distribute any proceeds of such disposition according to applicable law.

**G. LATE CHARGES; RETURNED FUNDS:** If you fail to make any payment within 10 days after it is due, you will be charged a late charge in the amount of 5% of the installment on installments in excess of $200, or $10 on installments of $200 or less. If any check, instrument or electronic funds transfer you give us is returned unpaid for any reason, you promise to pay us our reasonable expenses incurred as a result of the funds being returned unpaid.

**H. BUYER'S CREDIT INFORMATION:** You promise that you have given true and correct information in your application for credit and understand that we have relied upon the correctness of that information in entering into this contract. You promise that you have given us a true payoff amount on any vehicle traded in and you promise that if it is not correct and is greater than the amount shown in this contract, you will pay the excess to us upon demand.

**I. OTHER AGREEMENTS:** (1) To the extent permitted by law, you agree that if we accept monies in sums less than those due or make extensions of due dates of payments under this contract, doing so will not be a waiver of our right to enforce the contract terms as written as to any amounts due thereafter. (2) You will allow us to inspect the vehicle at reasonable times and notify us of any change of your address within 30 days. (3) Unless prohibited by law, we reserve the right to assign this contract without giving notice to you thereof, and you agree that the assignee will have all of our rights and remedies under the contract. In any event, you agree that you will continue to pay all that is still owed under this contract at the times, and in the amounts provided by this contract, to NMAC, until such time that you are notified otherwise. You agree not to assign any of your rights or obligations under this contract. (4) All of the agreements between us and you are set forth in this contract and no modification of this contract shall be valid unless it is made in writing and signed by you and us, except as otherwise permitted by statute or required by law. (5) Any provision of this contract which may be held invalid shall not mean that this contract is otherwise unenforceable and the remaining provisions of this contract shall continue to be binding, to the extent legally possible. (6) Except as otherwise provided by law or in this contract, any notice we are required, or desire, to send you will be deemed properly and sufficiently transmitted when delivered to you by hand or when placed in a depository of the U.S. Postal Service, postage prepaid, addressed to your last address as shown by our records (including the last address you have notified us of). (7) If a co-buyer is listed as a party to this contract and a separate address is not listed for such co-buyer, then any notice to such co-buyer required or permitted by this contract or applicable law will be sufficiently given or made if placed in a depository of the U.S. Postal Service, postage prepaid, addressed to the last known address of the buyer. (8) We may accept payments with "Payment in Full," similar language or other restrictive endorsements without being bound by such language or waiving any of our rights. (9) You agree to execute and deliver to us any document which may be necessary to perfect or maintain the Seller's security interest in the vehicle, including without limitation, any license, title or registration document, and to provide us with information or documentation related to the vehicle and this contract as we may reasonably request from time to time. (10) You agree that this contract, including fees, charges and disclosures, will be governed by the internal laws of Illinois and other applicable law, except that refunds or rebates, collections, enforcement and repossession-related activity will be governed by the law of buyer's state of residence at the time of the activity. (11) You (and any guarantor of this contract, by signing as provided herein) agree that, in the event a refund or rebate becomes due under this contract, we may pay such refund or rebate directly to the buyer irrespective of the original source of payment of the amount refunded or rebated, whether from buyer, co-buyer or any guarantor of this contract. (12) To the extent permitted by law, you consent that we, our assignees, and our agents may contact you at any telephone number we have for you, including any cell phone numbers and any phone numbers listed on this document, by any means we select, including an automatic telephone dialing system, text messaging, and/or an artificial or pre-recorded voice.

**J. IMPORTANT LIMITATIONS ON OUR RIGHTS:** Notwithstanding any contrary provisions of this contract or any other document or communication, all rights and remedies of Seller and any Holder under this contract will be exercised only in accordance with all applicable laws and without breaching the peace. If any amount is contracted for, charged or received pursuant to this contract (or pursuant to any document or communication relating to this contract) which, but for this paragraph, would exceed the amount lawfully allowed, the amount will be automatically reduced to the maximum amount lawfully allowed and any excess amount received or collected will be promptly refunded to you. **Nothing in this contract is to be construed to waive any claims or defenses you may have arising out of the sale or to waive any rights of action for any illegal act in collecting any payments or in any repossession.**

**K. WARRANTIES: YOU AGREE THAT THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, REPRESENTATIONS, PROMISES OR STATEMENTS AS TO THE CONDITION, FITNESS OR MERCHANTABILITY OF THE VEHICLE THAT HAVE BEEN MADE BY SELLER. THE SELLER UNDERTAKES NO RESPONSIBILITY FOR THE QUALITY OF THE GOODS EXCEPT AS OTHERWISE PROVIDED IN THIS CONTRACT. THE SELLER ASSUMES NO RESPONSIBILITY THAT THE GOODS WILL BE FIT FOR ANY PARTICULAR PURPOSE FOR WHICH YOU MAY BE BUYING THESE GOODS, EXCEPT AS OTHERWISE PROVIDED IN THE CONTRACT. ANY STATEMENT AS TO THE YEAR MODEL OF THE VEHICLE IS FOR IDENTIFICATION ONLY AND IS NOT A REPRESENTATION OR WARRANTY BY US. THE PRECEDING PORTIONS OF THIS SECTION K: (1) DO NOT APPLY IF SELLER MAKES ANY WRITTEN WARRANTY OR**

This is not the Authoritative Copy

IF SELLER ENTERS INTO A SERVICE CONTRACT AT THE TIME OF SALE OR WITHIN 90 DAYS THEREAFTER, AND (2) DO NOT AFFECT ANY MANUFACTURER OR DISTRIBUTOR WARRANTY, IF ANY. IF THE VEHICLE IS A USED CAR, THIS SECTION AND THE OTHER PORTIONS OF THIS CONTRACT ARE SUBJECT TO THE NOTICE REGARDING THE WINDOW FORM IN THIS CONTRACT AND TO THE WINDOW FORM.

**L. ELECTRONIC CONTRACTING AND SIGNATURE ACKNOWLEDGMENT:** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

---

**NOTICE: THE FOLLOWING APPLIES TO THE SALE OF A USED VEHICLE ONLY. THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

**AVISO: LO SIGUIENTE APLICA A LA VENTA DE UN VEHÍCULO USADO UNICAMENTE. LA INFORMACIÓN QUE USTED VE EN EL FORMULARIO DE LA VENTANILLA DE ESTE VEHÍCULO FORMA PARTE DE ESTE CONTRATO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA SUPEDITA CUALESQUIERA DISPOSICIONES CONTRARIAS EN EL CONTRATO DE VENTA.**

---

**NOTICE:** ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

To contact Nissan Motor Acceptance Corporation about this contract, call 1-800-456-6622.

## ARBITRATION CLAUSE — IMPORTANT — PLEASE REVIEW — AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose one of the following arbitration organizations, and its applicable rules, to conduct the arbitration: JAMS, 1920 Main St., Ste. 300, Irvine, CA 92614 (www.jamsadr.com), the American Arbitration Association, 1633 Broadway, 10th Floor, New York, NY 10019 (www.adr.org), or any other organization subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statutes of limitation. Unless applicable law provides otherwise, the arbitration hearing shall be conducted in the federal district in which you reside unless the seller of the vehicle is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service and case management fee, your arbitrator and hearing fee and any arbitration appeal fees you incur all up to a maximum of $5,000, unless the law requires us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims are frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this clause, then the provisions of this clause shall control. The arbitrator's award shall be final and binding on all parties, except that you may appeal any arbitrator's award pursuant to the rules of the arbitration organization, and we may only appeal an award against us exceeding $100,000. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.

You retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, and we agree to reimburse your filing fees for such proceedings. You and we retain any rights to self-help remedies, such as repossession. You also retain the right to seek individual injunctive relief in court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Clause shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable.

## GUARANTEE

For purposes of this Guarantee only, the words "I" and "my" refer to all Guarantors signing this Guarantee. The words "you" and "your" refer to the Seller (or to the Holder of this contract if it is assigned). The word "Buyer" includes "Co-Buyer".

I guarantee payment to you of all sums from time to time owed under this contract. If the Buyer fails to pay any money that is owed under this contract, I will pay it on demand without first requiring that you proceed against the Buyer or that you perfect or ensure enforceability of the Buyer's obligation or security. I represent to you that this Guarantee is genuine, legally valid and enforceable, and to the extent allowed by law, I waive notice of its acceptance and any defaults thereunder and any other notices which may be required. I agree that I am jointly and severally liable with all other Guarantors signing the Guarantee for the performance of all of its terms. I agree to be liable even if you give the Buyer more time to pay one or more payments, compromise or release any rights against Buyer or any of the other Guarantors, or release any security. If I default under this Guarantee and you refer it to an attorney who is not the salaried employee of the Seller or Holder of this contract for collection, I will pay your attorney's fees, court costs and disbursements, to the extent permitted by law, it being understood and agreed that I hereby waive any such limitations imposed by law which I may legally waive. **I have received a completed copy of this contract and this Guarantee at the time of signing.**

Guarantor_____    Guarantor_____
Address N/A                         Address N/A
_____ Zip N/A    _____ Zip N/A
Telephone N/A                       Telephone N/A

**I hereby guarantee the collection of the above described amount upon failure of the Seller named herein to collect said amount from the Buyer named herein.**

# STATE OF ILLINOIS
## CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO. |
|---|---|---|---|---|---|
| 1N4AL3AP0FC116031 | 2015 | NISSAN | ALTIMA 2.5/S/SV/ | 4 DOOR | 15149691762 |
| 1N4AL3AP0FC116031 | | | | | |

| DATE ISSUED | ODOMETER | CCM | MOBILE HOME SQ. FT. | PURCHASED | TYPE TITLE |
|---|---|---|---|---|---|
| 05/29/15 | 13 | | | 05/21/15 | ORIGINAL |
| | 13 | | | NEW | |

MAILING ADDRESS

LEGEND(S)

ACTUAL MILEAGE

NISSAN MOTOR ACCEPTANCE CORP
PO BOX 254648
SACRAMENTO CA 95865-4648

OWNER(S) NAME AND ADDRESS
IESHA GORDON
7341 S ALBANY
CHICAGO IL 60629

FIRST LIENHOLDER NAME AND ADDRESS
NISSAN MOTOR ACCEPTANCE CORP
PO BOX 254648
SACRAMENTO CA 95865-4648

SECOND LIENHOLDER NAME AND ADDRESS

**RELEASE OF LIEN**
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____
Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

**NEW LIEN ASSIGNMENT:** The information below must be on an application for title and presented to the Secretary of State.
Secured Party: _____ Address: _____

Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

**ASSIGNMENT OF TITLE**
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING: NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
WARNING-ODOMETER DISCREPANCY.

"If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair-market value unless this document is accompanied by a salvage application."

Signature(s) of Seller(s) _____
Printed Name(s) of Seller(s) _____ DATE OF SALE _____
I am aware of the above odometer certification made by seller.
Signature(s) of Buyer(s) _____ Printed Name _____

I Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD

CONTROL NO.

*Jesse White*
JESSE WHITE, Secretary of State

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

---

MUST BE COMPLETED BY SELLER
**DO NOT DETACH UNTIL SOLD**
**NOTICE OF SALE**
SEE INSTRUCTIONS ON REVERSE

| NISSAN | 2015 | 1N4AL3AP0FC116031 | |
|---|---|---|---|
| Vehicle Make | Vehicle Year | Vehicle Identification Number (VIN) | Date |

Name of Seller (Current Registered Owner) _____ Name of Buyer _____
Complete Address of Seller _____ Complete Address of Buyer _____
City _____ State _____ ZIP _____ City _____ State _____ ZIP _____
Under penalties of perjury, I hereby certify that the foregoing is true and correct under the laws of the United States.
Seller's Signature _____ Printed Name of Seller _____ Date _____

Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

**FIRST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser / Street / City / State / Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING — NO TENTHS
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale / Dealer's Name / Dealer No.

Agent's Signature / Printed Name (same as signature)
I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent / Printed Name (same as signature)

**SECOND REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser / Street / City / State / Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING — NO TENTHS
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale / Dealer's Name / Dealer No.

Agent's Signature / Printed Name (same as signature)
I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent / Printed Name (same as signature)

**THIRD REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser / Street / City / State / Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING — NO TENTHS
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale / Dealer's Name / Dealer No.

Agent's Signature / Printed Name (same as signature)
I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent / Printed Name (same as signature)

**FOURTH REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser / Street / City / State / Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING — NO TENTHS
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale / Dealer's Name / Dealer No.

Agent's Signature / Printed Name (same as signature)
I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent / Printed Name (same as signature)

**LAST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser / Street / City / State / Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING — NO TENTHS
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale / Dealer's Name / Dealer No.

Agent's Signature / Printed Name (same as signature)
I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent / Printed Name (same as signature)

VSD 40.24

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

## NOTICE OF SALE INSTRUCTIONS

When a vehicle owner sells and/or releases interest in a vehicle that is titled in the State of Illinois, this form must be completed immediately and mailed to the Illinois Secretary of State, Vehicle Services Department, Record Inquiry Division, 501 S. Second St., Rm. 408, Springfield, IL 62756, to ensure that your responsibility for the vehicle is released.

Completion of this form **does not satisfy the transfer of ownership requirements** as set forth in the Illinois Compiled Statutes. Illinois law requires the owner of a vehicle to complete and sign the Assignment of Title section on the Certificate of Title to the buyer who must apply to the Vehicle Services Department for a Certificate of Title.

Printed by authority of the State of Illinois VSD 40.24

EXHIBIT - C



6/18/2021

**NADA Used Cars/Trucks**

National Bankruptcy Services, LLC

14841 Dallas Parkway, Suite 300
Dallas, TX 75254
972-643-6612
Joshua.Priddy@NBSDefaultServices.com

## Vehicle Information

| | |
|---|---|
| **Vehicle:** | 2015 Nissan Altima Sedan 4D S 2.5L I4 |
| **Region:** | Central |
| **Period:** | May 31, 2021 |
| **VIN:** | 1N4AL3AP0FC116031 |
| **Mileage:** | 82,500 |
| **Base MSRP:** | $22,560 |
| **Typically Equipped MSRP:** | $23,735 |
| **Weight:** | 3,191 |



## NADA Used Cars/Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| **Monthly** | | | | |
| **Trade-In** | | | | |
| Rough | $7,650 | N/A | -$150 | **$7,500** |
| Average | $8,775 | N/A | -$150 | **$8,625** |
| Clean | $9,675 | N/A | -$150 | **$9,525** |
| Clean Loan | $8,725 | N/A | -$150 | **$8,575** |
| Clean Retail | $12,100 | N/A | -$175 | **$11,925** |
| **Weekly** | | | | |
| **Auction** | | | | |
| Low | $5,225 | $156 | N/A | **$5,381** |
| Average | $7,775 | $156 | N/A | **$7,931** |
| High | $10,350 | $156 | N/A | **$10,506** |

*The auction values displayed include typical eqiupment and adjustments for mileage and any of the following applicable accessories: engine size, drivetrain, and trim.

## Selected Options

| | Trade-In/Loan | Retail |
|---|---|---|
| W/out Power Driver's Seat [VIN Precision+] | -$150 | -$175 |

NADA Used Car Guide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report.
NADA Used Car Guide and its logo are registered trademarks of National Automobile Dealers Association, used under license by J.D. Power.
©2021 J.D.Power